# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 26, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP156-CR**

Cir. Ct. No. 2018CF2447

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

ROY L. YOAKUM,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dane County: NICHOLAS McNAMARA, Judge. *Affirmed.*

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Roy L. Yoakum appeals a judgment of conviction and an order of the Dane County Circuit Court denying his postconviction motions.

In the postconviction motions, Yoakum contended that: (1) he is entitled to a postconviction evidentiary hearing and a new trial because he was provided ineffective assistance of counsel; and (2) he is entitled to a new trial based on newly discovered evidence. On appeal, Yoakum renews those arguments and asserts that the circuit court erred in denying his ineffective assistance of counsel motion without an evidentiary hearing and erred in denying his motion for a new trial based on newly discovered evidence. We conclude that the circuit court properly denied Yoakum's postconviction motion without a hearing because Yoakum does not allege sufficient facts in support of his motion and the record conclusively demonstrates that Yoakum was not provided ineffective assistance of counsel. We also conclude that the newly discovered evidence does not warrant a new trial. We affirm.

## BACKGROUND

¶2    The following material facts are gleaned largely from the criminal complaint and the trial transcript.

¶3    Officers with the City of Madison Police Department were dispatched to a residence after receiving a call that a person had been shot with a firearm. At the residence, officers spoke with Lisa and were informed that Lisa's wife, Carol, had been shot by Yoakum.[1]

¶4    Yoakum was charged with the following crimes, putting aside repeater allegations: (1) attempted first-degree intentional homicide with a

---

[1] Pursuant to WIS. STAT. RULE 809.86 (2019-20), and consistent with the parties' briefing in this court, we refer to the victim and her wife with the pseudonyms "Carol" and "Lisa," respectively. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

dangerous weapon; and (2) possession of a firearm by a felon. Yoakum pleaded not guilty, and the case proceeded to a jury trial.

¶5　At trial, Lisa testified to the following. Lisa met Yoakum for the first time at a gas station near her house. Over the course of the following week, Lisa met with Yoakum three times and engaged in sex with him once. On one of these occasions, she saw that Yoakum was in the possession of a gun.

¶6　Approximately one week after Lisa and Yoakum met, Carol confronted Lisa at their residence after Carol found text messages from Yoakum on Lisa's cell phone. Yoakum called Lisa later that day and told her that Carol had called him numerous times. Yoakum stated on one call that "your bitch keep calling my phone …. I have to blow Shorty down." Lisa understood this statement as Yoakum threatening to shoot Carol. Lisa told Yoakum that she was planning to leave the house so that Carol could calm down. Lisa left the house on foot, but eventually returned because she was unable to arrange for a ride.

¶7　That same evening, Carol told Lisa that Yoakum was coming to their house. At the time Lisa saw headlights in the driveway, Carol went outside. As Lisa was opening the door leading to the driveway, she heard a gunshot and saw Carol walking back toward the house. Carol told her that Yoakum shot her "right in the heart." Lisa saw Yoakum step into his vehicle and drive away. Lisa then called the police.

¶8　Carol testified to the following at trial. Carol discovered Lisa's relationship with Yoakum after looking at Lisa's text messages on Lisa's phone and called Yoakum repeatedly in the hours leading up to the shooting. When Carol saw Yoakum's vehicle pull into the driveway, she walked outside to confront him. Yoakum was already getting out of his vehicle when Carol approached him.

3

Yoakum stated, "let me show you something," pulled out a gun, and shot her in the chest. Yoakum then returned to his vehicle and drove away. After Yoakum shot her, Carol saw Lisa walking out of the house, and Carol told Lisa to call the police. Carol did not own a gun, did not point a gun at Yoakum's neck, and did not hide a gun in the house after the shooting. Carol was transported to the hospital after the incident and was able to recover from her injuries.

¶9 The confrontation between Carol and Yoakum was captured in part by a security camera at a gas station across the street from the house. The camera footage showed a vehicle arrive at Lisa and Carol's house and a person approach the vehicle in the driveway. The vehicle drove away shortly after it had arrived. The police received Lisa's 911 call about one minute after the camera showed the vehicle driving away.

¶10 Donnesha Boyd—a woman with whom Yoakum was in a relationship at that time—also testified at trial. According to Boyd, at a time that was about fifteen minutes before the shooting, Yoakum sent a text message to her stating, "I'm just not worth nothing to you. Make sure you watch the news tomorrow. I'm-ma make it easy for everybody." At a time that was about fifteen minutes after the shooting, Yoakum sent another text message to Boyd stating, "Answer your phone, please, I just did some dumb ass shit." Yoakum then appeared at Boyd's house and told her that he had shot someone. Boyd allowed Yoakum to hide at her mother's house, and the two of them planned to flee to Texas.

¶11 Four days after the shooting, Yoakum was arrested at Boyd's mother's house. The police learned of Yoakum's location by interviewing Boyd's brother, Richard Harris. Harris testified to the following at trial. He told the police that he visited Boyd's mother's house while Yoakum was hiding there. Yoakum told Harris

that he "shot the girl" and threw the gun in a lake. Yoakum asked Harris to "go over there and shut the girl up, talk to the girl," which Harris understood as a reference to Lisa. However, Harris did not do as Yoakum asked. Harris saw Yoakum on a prior occasion in possession of a gun.

¶12 Yoakum testified at trial to the following. Yoakum drove to Lisa and Carol's house for the purpose of giving Lisa a ride to Sun Prairie.[2] Yoakum did not bring a gun to the house. When he arrived at the house, he parked in the driveway and saw a person whom he later learned was Carol approach from the back of the house. Yoakum got out of his vehicle, and Carol put a gun to Yoakum's neck. Yoakum tried to push the gun away from his neck and the gun fired in the process. He then drove away in his vehicle without determining if Carol was injured. Yoakum admitted sending the above-mentioned text messages to Boyd before and after the shooting and admitted that he hid with Boyd for four days after the shooting.

¶13 The jury found Yoakum guilty on both counts. Yoakum filed a postconviction motion for a new trial. First, Yoakum claimed that he is entitled to a new trial because he was provided ineffective assistance of counsel. Second, Yoakum argued that he is entitled to a new trial because newly discovered evidence indicated that Harris lied during his trial testimony. The circuit court denied Yoakum's motions without an evidentiary hearing and determined that the record conclusively established that Yoakum could not demonstrate that he was entitled to a new trial based on ineffective assistance of counsel or newly discovered evidence.

---

[2] For context, we note that Lisa denied at trial that she asked Yoakum to pick her up and testified that Yoakum never offered to do so.

¶14     Yoakum appeals the judgment of conviction and the order denying his postconviction motions.

¶15     Additional material facts are mentioned in the following discussion.

## DISCUSSION

¶16     On appeal, Yoakum argues that the record demonstrates that he was provided ineffective assistance of trial counsel, and that the circuit court erred in denying his postconviction motion for a new trial on that ground without an evidentiary hearing. Yoakum also argues that the circuit court erred in denying his motion regarding newly discovered evidence. We address each argument in turn.

### I. Motion Regarding Ineffective Assistance of Trial Counsel.

¶17     Yoakum argues that he received ineffective assistance of counsel because counsel: (1) failed to impeach Lisa at trial with prior statements that were allegedly inconsistent; (2) failed to object to statements from the prosecutor, and evidence, that Yoakum was in romantic relationships with women other than Lisa; and (3) failed to object to the State's use of suppressed statements used in order to impeach Yoakum's testimony on cross-examination. For the following reasons, we conclude that Yoakum has not demonstrated that the court erred in denying, without an evidentiary hearing, his postconviction motion regarding his ineffective assistance of counsel claim.

### A. Standard of Review and Governing Principles.

¶18     We begin by setting forth our standard of review and governing principles.

¶19    Whether a defendant's postconviction motion alleges sufficient facts regarding ineffective assistance of counsel to entitle a defendant to a hearing for the relief requested is a question of law that we review de novo. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court may properly deny the motion without holding an evidentiary hearing. *Id.*

¶20    "For a claim of ineffective assistance of counsel to be successful, a defendant must demonstrate both that (1) counsel's representation was deficient; and (2) the deficiency was prejudicial." *State v. Dalton*, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120. Both prongs of the inquiry need not be addressed if the defendant makes an insufficient showing on one. *Id.*

¶21    Whether trial counsel performed deficiently is a question of law we review de novo. *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93. "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *State v. Ruffin*, 2022 WI 34, ¶30, 401 Wis. 2d 619, 974 N.W.2d 432. "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *Breitzman*, 378 Wis. 2d 431, ¶38 (quoting *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695).

¶22    Whether counsel's deficient performance was prejudicial is also a question of law we review de novo. *Id.*, ¶39. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### B. Lisa's Testimony.

¶23 Yoakum argues that he was provided ineffective assistance of counsel because his trial attorney failed to attempt to impeach Lisa's trial testimony with two portions of a statement Lisa gave during an interview with police. More particularly, Yoakum focuses on Lisa's trial testimony and her assertions to police about what she told Yoakum concerning her whereabouts on the day of the shooting. Yoakum contends that his counsel's failure to impeach Lisa's trial testimony was deficient performance and prejudicial because, in closing argument, the prosecutor told the jury that Yoakum did not think that Lisa was at the residence when Yoakum confronted Carol in the driveway. We now address each of Lisa's pertinent assertions to the police.

¶24 Lisa testified at trial that, at one point, she told Yoakum that she planned to leave the house:

> I told [Yoakum] he didn't have to worry about [Carol] calling him about me because I was leaving. I let him know like she would eventually stop calling 'cause I wouldn't have been there, you know, like if I moved myself out of the situation that she wouldn't have been mad. Like every time she look up at me, she gonna get mad, she gonna say something to you. So I felt like if I left, then she would eventually calm down 'cause it was just her and the kids.

Lisa also testified that she then left the house briefly but returned because her sister was unable to give her a ride.

¶25    In support of his allegation that Lisa's police interview contradicts her trial testimony, Yoakum points to a portion of the police interview in which Lisa stated that she had left the house briefly prior to the shooting and then returned:

> [Lisa]: … I was coming back towards the house.
>
> [Detective]: Okay. Gotcha.
>
> [Lisa]: Like I said, I had left but [Carol was] still acting a God damn fool and the two kids was there.
>
> [Detective]: I gotcha. Okay.
>
> [Lisa]: So I'm like well, shit, it didn't – that didn't make sense for me to leave if you was gonna still be acting a damn fool, like telling me you're throwing my shit out and all this extra shit, like it was just so much.

¶26    Lisa's trial testimony and that portion of her statement to the police are not inconsistent and, as a result, there was no deficient performance by trial counsel on the ground that counsel did not attempt to cross-examine Lisa concerning that assertion to police. Lisa testified that she told Yoakum that she was planning to leave the house in order to give Carol an opportunity to calm down. Lisa testified that she managed to leave the house at one point but later returned because her sister was unable to give her a ride. Similarly, in her police interview, Lisa stated that she left the house at one point but later returned because she was worried about Carol acting like a "fool" around their children. Although Lisa provided different reasons in her trial testimony and her police interview for returning to the house prior to the shooting, Lisa's police interview statements and trial testimony are not inconsistent with respect to Yoakum's knowledge of Lisa's whereabouts. Accordingly, that assertion in Lisa's police interview does not contradict her testimony that she told Yoakum she was going to leave the house. Thus, Yoakum's counsel was not deficient in failing to attempt to impeach Lisa's trial testimony on that basis.

¶27 Next, Yoakum points to the following portion of Lisa's trial testimony and her statements to Yoakum:

[Prosecutor]: … You stated that your last conversation with [Yoakum] was that you were leaving the house?

[Lisa]: Yes.

[Prosecutor]: So at least from what you know he did not know you were at the house?

[Lisa]: No.

[Prosecutor]: And you never told him you were at the house?

[Lisa]: No.

¶28 Yoakum contrasts that trial testimony with a portion of the police interview in which Lisa told an officer that she had called Yoakum, while he was in his car and prior to the shooting, and asked him, "did you just tell [Carol] you was on your way over *here*?" (Emphasis added.) Lisa told the officer that Yoakum responded that he was on his way.

¶29 Yoakum contends that introducing at trial that portion of Lisa's statement to the police would have indicated to the jury that Yoakum "knew [Lisa] was at the house" at the time of the shooting and, therefore, would have undermined the State's assertion in closing argument that Yoakum went to the house to shoot Carol thinking there would be no witnesses at the house. Assuming without deciding that trial counsel performed deficiently, we nonetheless conclude that counsel's failure to impeach Lisa's trial testimony with that assertion Lisa made to the police was not prejudicial.

¶30 Yoakum's argument fails for at least two reasons. First, as the sole basis for his prejudice contention, Yoakum argues that "[i]mpeachment of Lisa

would have contributed to the jury's reasons to acquit." However, that conclusory assertion is not explained by Yoakum, and we see no basis for that allegation regarding this tangential topic. Second, Yoakum centers his argument on a small portion of the prosecutor's closing argument, but the State's statement in closing that Yoakum thought Lisa was not at the residence was not a necessary part of the State's burden to prove each element of the crime of attempted first-degree intentional homicide. Rather, the intent to kill was a required element of the State's proof. *See* WIS JI—CRIMINAL 1070. In other words, whether Yoakum believed that Lisa was at home while he was driving to the house did not matter in light of the determination of the jury that Yoakum had the requisite intent to kill Carol.[3]

¶31 An attempt to impeach Lisa with this inconsistent assertion to police would not have undermined the State's theory that Yoakum shot Carol in the driveway with the intent to kill Carol and would not have affected the jury's determination that Yoakum was guilty of attempted first-degree intentional homicide. Therefore, Yoakum's counsel's failure to impeach Lisa's testimony in this regard was not prejudicial. *See **Breitzman***, 378 Wis. 2d 431, ¶39 ("To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (citation omitted)).

¶32 Accordingly, Yoakum has not provided sufficient facts to support his argument, the record conclusively demonstrates that Yoakum's counsel did not

---

[3] We also observe that Yoakum's allegations of deficient performance as to the particular assertion of Lisa to the police require that we conclude that trial counsel should have foreseen during trial that the State, in its closing argument, would assert that, while driving to Lisa and Carol's residence, Yoakum thought that Lisa was not at the residence. Yoakum gives no reason to conclude that the trial counsel should have divined during trial that this particular argument would be made by the State.

provide ineffective assistance concerning the cross-examination of Lisa, and the circuit court properly denied Yoakum's postconviction motion for a new trial and his request for a postconviction hearing in this regard. *See Allen*, 274 Wis. 2d 568, ¶9.

## C. Evidence of Yoakum's Relationships.

¶33    Yoakum argues that he was provided ineffective assistance of counsel because his counsel failed to object to argument about, and evidence of, Yoakum's romantic relationships with women other than Lisa. Prior to trial, Yoakum moved to exclude testimony regarding his "acts of infidelities" on the ground that the prejudicial nature of such testimony would outweigh the probative value. The circuit court ruled that evidence of Yoakum's romantic relationships with Lisa and two other women was admissible because it was relevant and did not pose a substantial risk of unfair prejudice. Yoakum does not challenge that ruling. The circuit court explained before trial that the State would not be allowed to use the evidence of these relationships to suggest that Yoakum has a bad character, and the court advised Yoakum's counsel to object to any improper argument on this basis.

¶34    Yoakum contends that his counsel was ineffective for failing to object at the following times during the trial: during opening statement, the prosecutor twice referred to women Yoakum had relationships with as "yet another girlfriend"; when examining Boyd, the prosecutor asked whether she knew someone named Allison, and Boyd replied that "[Yoakum] told me that they was just best friends, but now I heard that that's his wife"; and during the State's cross-examination of Yoakum, the prosecutor asked whether he was in a relationship with other women

at the same time he was in a relationship with Lisa.[4] Yoakum asserts that his counsel should have objected because the two comments made in the opening statement, and those questions, suggested that Yoakum is a "bad guy." We disagree.

¶35 First, counsel's failure to object was not deficient performance because the prosecutor did not violate the circuit court's pretrial ruling. The circuit court ruled that the State would be allowed to ask questions about Yoakum's relationships; the circuit court circumscribed only the State's ability to make a particular argument based on the evidence of those relationships. Yoakum gives no reason for us to conclude that the circuit court would have revisited its pretrial ruling and, as a result, an objection to any of the questions about Yoakum's relationships would have been overruled. Failing to make an objection that would have been overruled is not deficient performance. *State v. Stroik*, 2022 WI App 11, ¶36, 401 Wis. 2d 150, 972 N.W.2d 640 ("[A]n attorney's failure to make an objection that would have been properly overruled by the court is not deficient performance."). Further, the prosecutor's references to "yet another girlfriend" in its opening statement were relevant to the jury's understanding of the evidence and the relationships of the witnesses. No part of those comments suggested that Yoakum has a bad character because of those relationships. Accordingly, even if Yoakum's counsel had objected, the circuit court would have overruled those objections to the opening statement. Counsel's failure to object to certain comments and questions regarding Yoakum's relationships was not deficient performance.

¶36 Second, even if we would assume that counsel's performance was deficient—and we do not make that assumption—counsel's failure to object to these

---

[4] As the State points out, Yoakum's counsel objected during closing argument to one of the prosecutor's references to Yoakum's relationships as an impermissible character argument, and the circuit court sustained that objection.

13

comments and questions was not prejudicial. The fact that Yoakum had relationships with multiple women did not in any material way bolster the overwhelming evidence presented at trial that Yoakum shot Carol, including but not limited to: Boyd's testimony that Yoakum confessed to shooting someone; Yoakum's text messages to Boyd after the shooting that he "did some dumb ass shit"; Harris's testimony that Yoakum confessed to shooting a "girl" and disposing of the gun; the gas station security camera footage showing a vehicle briefly visit Lisa and Carol's house minutes before Lisa's 911 call; Lisa's testimony that Yoakum stated he was going to "blow [Carol] down"; Lisa's testimony that she saw Yoakum get in the car after Carol had been shot; and Carol's in-court identification of Yoakum as the person who shot her. Therefore, Yoakum has not shown that there is a reasonable probability that the result of the proceeding would have been different had his counsel made the objections. *See Breitzman*, 378 Wis. 2d 431, ¶39.

¶37 For these reasons, the record conclusively demonstrates that Yoakum's counsel did not provide ineffective assistance by failing to object to the prosecutor's statements about, and evidence of, Yoakum's relationships, and the circuit court properly denied Yoakum's motion for a new trial and his request for a postconviction hearing in this regard. *See Allen*, 274 Wis. 2d 568, ¶9.

### D. The State's Use of Yoakum's Statement to Police.

¶38 Yoakum argues that he was provided ineffective assistance of counsel because his counsel failed to object to the State's use of his excluded statement during cross-examination. Prior to trial, Yoakum moved to suppress statements he made to the police after his arrest that were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The circuit court granted Yoakum's suppression

motion but explained that, if Yoakum testified at trial, the State could use his post-arrest statements to impeach any inconsistent testimony from Yoakum.[5]

¶39    On appeal, Yoakum does not dispute that the State may properly use his statements that were taken in violation of *Miranda* for the purpose of impeaching his trial testimony with prior inconsistent statements given to the police. *See State v. Rejholec*, 2021 WI App 45, ¶27 n.10, 398 Wis. 2d 729, 963 N.W.2d 121 ("A statement of the defendant made without the appropriate *Miranda* warnings, although inadmissible in the prosecution's case-in-chief, may be used to impeach the defendant's credibility if the defendant testifies to matters contrary to what is in the excluded statement." (quoting *State v. Mendoza*, 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980))).

¶40    Yoakum focuses his argument on the facts that, during the State's cross-examination of Yoakum, he was asked about the following portions of his suppressed police interview:  (1) Yoakum's statement to a detective that he had "been on the run" after the time of the shooting; (2) the version of events that Yoakum gave the detective; and (3) that Yoakum did not give the detective the version of events that he gave at trial regarding his alleged struggle with Carol in which the gun fired.  Yoakum contends that counsel should have objected to the introduction of the portions of the suppressed statements just mentioned because those statements were "arguably consistent with his trial testimony."  However, we have no basis to conclude that Yoakum's counsel's performance was deficient in

_____

[5] Specifically, the circuit court suppressed Yoakum's statements to the police because those statements were taken after Yoakum invoked his right to counsel during a custodial interrogation.  *See State v. Jennings*, 2002 WI 44, ¶26, 252 Wis. 2d 228, 647 N.W.2d 142 ("[T]he police must immediately cease questioning a suspect who clearly invokes the *Miranda* right to counsel at any point during custodial interrogation." (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981))).  On appeal, the State does not dispute that the circuit court properly suppressed these statements.

this regard because Yoakum does not explain why we should conclude that those portions of the interview statements were "arguably consistent" with his trial testimony. Rather, Yoakum makes only a conclusory statement in that regard. We will not develop this argument for Yoakum. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge"). The circuit court properly denied Yoakum's request for a postconviction hearing in this regard. *See Allen*, 274 Wis. 2d 568, ¶9.

¶41    In sum, we affirm the circuit court's rulings that Yoakum failed to establish that his trial counsel was constitutionally ineffective.

## II.  Motion Regarding Newly Discovered Evidence.

¶42    Yoakum argues that the circuit court erred in denying his postconviction motion for a new trial based on newly discovered evidence. Specifically, Yoakum relies on an affidavit from Brandon Bremer, an inmate at the Dane County Jail. Bremer avers that he overheard Harris say, before Yoakum's trial, that he would lie on the witness stand because Harris disapproved of Yoakum's relationship with Boyd, Harris's sister. We begin our analysis by setting forth governing principles and our standard of review concerning postconviction motions seeking a new trial based on newly discovered evidence.

¶43    "If a judgment is to be set aside based on newly discovered evidence, the defendant must provide sufficient evidence to establish that defendant's conviction is a manifest injustice." *State v. McAlister*, 2018 WI 34, ¶31, 380 Wis. 2d 684, 911 N.W.2d 77. More particularly, a defendant must establish facts by clear and convincing proof, when considered in the context of the record as a whole, that: (1) the evidence was discovered after conviction; (2) the defendant was not

16

negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. *Id.*; WIS. STAT. § 805.15(3).[6] "If a defendant satisfies those four criteria, then 'the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.'" *McAlister*, 380 Wis. 2d 684, ¶32 (citation omitted). "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.* Newly discovered evidence is not sufficient to warrant a new trial if it fails to satisfy any one of the requirements. *See State v. Eckert*, 203 Wis. 2d 497, 516, 553 N.W.2d 539 (Ct. App. 1996).

¶44 Whether a defendant is entitled to a new trial based on newly discovered evidence is a discretionary decision of the circuit court that we review for erroneous exercise of discretion. *State v. Plude*, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. Whether a reasonable probability exists that, had the jury heard the newly discovered evidence, it would have had a reasonable doubt as to the defendant's guilt is a question of law that we review de novo. *Id.*, ¶33.

¶45 One argument from the State is the following. There is not a reasonable probability that the jury, looking at both the evidence presented at trial and the newly discovered evidence, would have had a reasonable doubt as to Yoakum's guilt. *See McAlister*, 380 Wis. 2d 684, ¶32. We agree for two reasons.

¶46 First, the State contends that we need not address Yoakum's argument because it is not sufficiently developed. *See Pettit*, 171 Wis. 2d at 647 (holding that

---

[6] The State does not dispute that Yoakum established the first three elements of the test for newly discovered evidence—*i.e.*, the evidence was discovered after conviction; the defendant was not negligent in seeking the evidence; the evidence is material to an issue in the case. *See State v. McAlister*, 2018 WI 34, ¶31, 380 Wis. 2d 684, 911 N.W.2d 77.

this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge"). On appeal, the only support for Yoakum's contention is this conclusory statement: "Discrediting Harris' testimony would have been key to the jury's deliberation, and likely would have resulted in an acquittal." However, Yoakum does not attempt to explain his bare conclusion with any analysis of the testimony in a meaningful context. For this reason alone, Yoakum's argument fails.

¶47    Second, any intended substantive argument from Yoakum also comes up short. Even if we assume that Bremer's testimony at a new trial consistent with his affidavit would undermine Harris's credibility to the point that a jury would not have believed Harris's testimony, there is not a reasonable probability that the outcome of the trial would have been different.

¶48    We recap Harris's testimony. Harris encountered Yoakum on the day after the shooting. Yoakum told Harris that he "shot the girl," then broke down the gun and threw it in a lake. Harris testified that Yoakum then asked him to "go over there and shut the girl [(Lisa)] up," but Harris did not do so. Harris also stated that he had previously seen Yoakum carrying a gun. The relevant portions of Harris's testimony are cumulative of other witnesses' testimony or not necessary to prove Yoakum's guilt. Like Harris, Boyd testified that Yoakum told her on the night of the shooting that he had shot someone. Further, both Lisa and Boyd testified that they had previously seen Yoakum carrying a gun. The other portions of Harris's testimony—*i.e.*, that Yoakum stated that he disposed of the gun and told Harris to "shut the girl up"—are not necessary to prove the elements of the charged crimes and would not have affected the jury's decision to convict. Thus, even with the affidavit casting doubt on Harris's credibility, there is not a reasonable probability that the jury would have reached a different verdict.

18

¶49 In sum, Yoakum has not alleged sufficient facts to demonstrate that his conviction is a manifest injustice in light of Bremer's affidavit, and we conclude that the circuit court properly denied Yoakum's request for a new trial. *See McAlister*, 380 Wis. 2d 684, ¶31.

## CONCLUSION

¶50 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.